724 P.2d 1271

**STATE of Arizona, Appellee,**

v.

**Frank WILSON, Jr., Appellant.**

**No. 1 CA–CR 9421.**

Court of Appeals of Arizona, Division 1, Department B.

Aug. 28, 1986.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Criminal Div. and Mark F. Aceto, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa Co. Public Defender by Stephen R. Collins, Deputy Public Defender, Phoenix, for appellant.

HAIRE, Judge.

This is an appeal from the revocation of appellant's probation and the resulting order requiring the payment of restitution. In September 1983, appellant pled guilty to attempted burglary in the third degree, a class 6 open-end offense. On November 14, 1983 appellant's sentence was suspended and he was placed on three years supervised probation. The terms and conditions of probation included, among other things, the following:

"2. Report to the probation officer at least once each month in writing and either in person or in writing at all other such times as directed by the probation officer.

\*    \*    \*    \*    \*    \*

"5. Pay a monthly fee for probation services to the Clerk of the Superior Court of Maricopa County at a rate of *$20.00* commencing on *2–15–84,* and due on the *15th* of each month thereafter during the term of probation.

\*    \*    \*    \*    \*    \*

"14. Make and pay restitution through the Clerk of the Superior Court of Maricopa County in the total amount of *$2,190.00* in regular monthly payments

of *$40.00* each month beginning on *2–15–84* and on the *15th* day of each month thereafter until paid in full.

\* \* \* \* \* \*

"16. Pay a reimbursement to the Clerk of the Superior Court of Maricopa County in the amount of $100.00 on or before ———————, or in regular monthly payments of $10.00 each month beginning on 2/15/84 and on the 15th day of each month thereafter until paid in full."

In July 1984, appellant's probation officer filed a petition to revoke probation. The petition alleged that appellant had not reported to his probation officer during June or July 1984 and that appellant had failed to make the required payments. After the petition was filed, a bench warrant was issued for appellant's arrest. Appellant was at large for more than one year after the filing of the revocation petition, and was arrested pursuant to the bench warrant on August 22, 1985. At the probation revocation proceedings, he admitted violating the terms of probation set forth above. The trial court accepted the admissions, revoked appellant's probation, and sentenced him to the presumptive term of 1.5 years with credit for 83 days of presentence incarceration. The court also ordered appellant to pay $2,190 in restitution six months after release from incarceration or as ordered by the Board of Pardons and Paroles.

Appellant was represented at all proceedings through sentencing, and is represented on this appeal by appointed counsel. Appointed counsel has filed a brief in compliance with *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) raising two arguable issues.

Appellant first argues that the court incorrectly found a factual basis for the violations of terms 5, 14 and 16 of appellant's terms and conditions of probation. As set forth above, these terms and conditions of probation required appellant to pay various sums to the clerk of the Maricopa County Superior Court. In *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), the United States Supreme Court held:

"[I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment." *Id.* at 672, 673, 103 S.Ct. at 2072, 2073, 76 L.Ed.2d at 233.

At the revocation proceedings, the only inquiry made by the court was whether appellant had paid the required amounts. Appellant admitted that he had not and stated that he had not been able to find employment. The presentence report indicated that appellant's only defense for not making the payments was that he was unable to find employment, and that the records indicated that appellant was chronically unemployed. Appellant argues that the trial court's inquiry falls short of the inquiry required by *Bearden,* and that therefore there was an insufficient factual basis to sustain appellant's probation revocation for violation of terms 5, 14 and 16.

The state responds that *Bearden* may be factually distinguishable; that appellant waived his objection to any flaws in the revocation proceedings by not objecting below; and that even if flaws exist in the

revocation proceedings as to some of the admitted violations, no flaws exist with regard to the appellant's admitted violation of term number 2 (failure to report) which by itself furnishes a sufficient basis for the revocation of appellant's probation.

■ We disagree with the state's first two contentions. *Bearden* is not limited to its facts, and the facts here would not make the *Bearden* inquiry inapplicable. *Bearden* stands for the proposition that under the Fourteenth Amendment, a sentencing court must inquire into the reasons for a probationer's failure to pay fines or restitution before sentencing the probationer to a term of imprisonment for the failure to pay. Also, because it would be fundamentally unfair under the Fourteenth Amendment to deprive the probationer of his conditional freedom simply because he could not pay the fine through no fault of his own, it would be fundamental error to fail to make the required inquiry. Therefore, appellant's failure to object below does not preclude him from raising this issue on appeal. *See State v. Stotts,* 144 Ariz. 72, 695 P.2d 1110 (1985).

The record shows that the trial court did not make a sufficient inquiry into the reasons for appellant's failure to pay the fines and restitution. The court did not determine whether the failure to pay was willful or the extent of appellant's efforts to obtain the resources to pay. If appellant's failure to pay were the only grounds for revoking his probation we would remand this case for a new disposition hearing in compliance with *Bearden.* However, appellant has also admitted that he violated term 2 of the terms and conditions of his probation, and no challenge is made to the validity of that admitted violation.

■ When a defendant is charged with multiple probation violations, a finding on appeal that some of the alleged violations are invalid does not necessarily invalidate the revocation proceeding. *State v. Jameson,* 112 Ariz. 315, 541 P.2d 912 (1975); *see also State v. Espinoza,* 113 Ariz. 360, 555 P.2d 318 (1976). Here, appellant admitted that he had not reported to his probation officer for two months, and after the petition to revoke was filed, he absconded for more than one year before being arrested. We conclude that the trial court committed error in not making the constitutionally required inquiry into the reasons for appellant's failure to pay, but because the revocation was supported by his admitted violation of another term and condition of probation, we will not reverse the revocation of appellant's probation.

Appellant's second contention is that in ordering restitution pursuant to A.R.S. § 13–603(C), the trial court committed error when it failed to set the amount of monthly payments and did not determine when the payments should begin.

■ Initially, we note that, despite the gratuitous language in *State v. Oehlerking,* 147 Ariz. 266, 709 P.2d 900 (1985), there is no requirement in A.R.S. § 13–603(C) that in setting the "manner" of payment, the court establish a monthly payment schedule as opposed to requiring payment of the total amount by a specified date. Therefore, appellant's second contention is without merit insofar as it consists of an attack on the form of the trial court's order. To the extent, however, that appellant's second contention consists of an argument that the trial court did not adequately consider appellant's economic circumstances in setting the amount and manner of payment of the restitution, a more difficult question is presented, which requires a review of the history of A.R.S. § 13–603(C) and the cases interpreting that section.

■ A.R.S. § 13–603(C) was originally added to Arizona law as part of the revised criminal code in 1977. *See* Laws 1977 ch. 142 § 48. It was originally numbered A.R.S. § 13–703(C) but in 1978 was transferred to Chapter 6 and given its present number. *See* Laws 1978, ch. 201, § 98. The language of subsection (C) of A.R.S. § 13–603 remained virtually unchanged from 1977 to 1983. Prior to July 14, 1983, A.R.S. § 13–603(C) read:

"If the court imposes probation it may also impose a fine as authorized by chapter 8 of this title and shall require the convicted person to make restitution to the victim of the crime in such amount and manner as the court may order, after consideration of the economic loss to the victim and the economic circumstances of the convicted person."

Thus prior to July 1983 restitution was authorized only in cases where the convicted person was placed on probation. The court was required to consider the economic circumstances of the convicted person before determining both the amount and the manner of payment of restitution. Under this statute we held that a trial judge was required to consider a defendant's ability to pay whenever restitution was ordered, and that where the sentencing judge did not make specific findings with regard to a defendant's ability to pay, the record had to demonstrate that the amount of restitution was a proper discretionary choice. *State v. Hawkins*, 134 Ariz. 403, 656 P.2d 1264 (App.1982).

In 1983 subsection (C) was amended to read as follows:

"If a person is convicted of an offense the court shall require the convicted person to make restitution to the victim of the crime or to the immediate family of the victim if the victim has died, in such an amount and manner as the court may order after consideration of the economic loss to the victim and economic circumstances of the convicted person." Laws 1983, ch. 123, § 1.

This amendment removed the limitation which authorized restitution in probation cases only. The amendment made restitution mandatory in all cases where a person was convicted and where the victim or, if the victim had died, the victim's immediate family, had suffered an economic loss. This amendment did not, however, change the language requiring the trial court to inquire into the convicted person's economic circumstances before determining both the amount of restitution and establishing the manner of payment.

In *State v. Nosie*, 150 Ariz. 498, 724 P.2d 584 (App.1986), this court considered the 1983 version of A.R.S. § 13–603(C) and held that it required the court to consider the convicted person's economic circumstances in setting the amount and the manner of payment. As in this case, *Nosie* involved an order which required the defendant to pay the total amount of the required restitution within "six months following your release from prison." Since there was nothing in the record to indicate that the defendant in *Nosie* would have the ability to pay the full amount within six months after release from prison, we noted that such an order did not properly take into consideration the defendant's economic circumstances as required by A.R.S. § 13–603(C).

In 1984, A.R.S. § 13–603(C) was again amended to read:

"If a person is convicted of an offense, the court shall require the convicted person to make restitution to the person who is the victim of the crime or to the immediate family of the victim if the victim has died, in the full amount of the economic loss as determined by the court and in the manner as determined by the court after consideration of the economic circumstances of the convicted person." *See* Laws 1984, ch. 123, § 1.

This amendment for the first time required the trial judge to order restitution in the full amount of the loss without regard to the economic circumstances of the defendant, but did not change the requirement that the judge consider the defendant's economic circumstances when setting the manner of payment. Since both the 1983 and 1984 versions of the statute contain substantially identical language requiring that the trial judge establish the manner of payment of restitution after consideration of the economic circumstances of the convicted person, decisions interpreting either version of the statute would be equally binding precedent insofar as concerns the

trial judge's duty relating to setting the manner of payment of restitution.[1]

In the present case, the trial court revoked appellant's probation and sentenced him to a term of imprisonment, ordering him to pay restitution in the amount of $2,190 to the Clerk of the Superior Court of Maricopa County "six months following release from custody...." There is no indication in the record that the trial judge considered appellant's economic circumstances in setting either the amount of restitution or the manner of payment of restitution. Under *Nosie,* the trial court's restitution order is clearly erroneous, and if we were to follow *Nosie,* we would be required to set aside the order of restitution and remand this matter for reconsideration of that issue.

Subsequent to the filing of *Nosie,* numerous cases have come to the attention of this court demonstrating the difficulty, if not the impossibility, of a literal application of A.R.S. § 13–603(C) when a sentence of imprisonment is imposed. These difficulties are demonstrated by this court's subsequent opinion in *State v. Currie,* 150 Ariz. 59, 721 P.2d 1186 (App.1986), which on substantially identical facts comes to a result directly in conflict with the court's prior opinion in *Nosie.* The court in *Currie* attempted to distinguish *Nosie* by noting that *Nosie* dealt with a 1983 version of A.R.S. § 13–603(C), while *Currie* dealt with the 1984 version. The court then stated that the "amended version ... places a different light on the requirements of the statute." *Currie* 150 Ariz. at 61, 721 P.2d at 1188. The "different light" referred to in *Currie* fails to illuminate how the 1984 version of the statute changes the requirements of the 1983 version concerning the required consideration by the trial judge of the economic circumstances of the convict-

ed person in establishing the *manner* of payment of restitution. In fact, there was no meaningful change.[2]

We are thus faced with conflicting precedents from this court on this issue. While we believe that *Nosie* properly interpreted the statutory language of A.R.S. § 13–603(C), after further consideration we conclude that a strict application of the literal language of § 13–603(C) leads to an unworkable result. *Cf. City of Phoenix v. Superior Court,* 101 Ariz. 265, 419 P.2d 49 (1966). (Statute providing that no person, other than those listed, should be allowed inside a 50 foot limit around polling places leads to an absurd result). It is, therefore, our duty to construe the statute, if possible, to make the law reasonable and workable, consistent with the overall legislative intent. *Id.*

As noted above, when A.R.S. § 13–703(C) was originally enacted it required restitution only when probation was imposed. The requirement that the judge consider the economic circumstances of the convicted person when imposing probation was a workable procedure. However, when a convicted person receives a prison sentence, rather than probation, it is generally impossible for a trial court to realistically determine or predict at the time of sentencing what the economic circumstances of the convicted person will be at the time he is released from incarceration, particularly when the convicted person is indigent. While the trial judge could consider the economic circumstances of the convicted person at the time of sentencing, the economic circumstances of that person will probably have changed significantly when the time for payment has arrived. A person could presumably become disabled

---

1. Appellant committed the crime he pled guilty to before the effective date of the 1984 amendment. The 1984 amendment became effective August 3, 1984. Appellant committed the instant offense nearly one year earlier on September 6, 1983. Therefore, under *State v. Gonzales,* 141 Ariz. 512, 687 P.2d 1267 (1984) and *State v. Nosie, supra,* the 1983 version of A.R.S. § 13–603(C) is the statute under which restitution could be imposed in this case.

2. The 1983 version required the setting of restitution "in [the] manner as the court may order after consideration of the ... economic circumstances of the convicted person." The 1984 version uses substantially identical language requiring the setting of restitution "in the manner as determined by the court after consideration of the economic circumstances of the convicted person."

while incarcerated or could perhaps inherit a substantial amount of money. In any event, the status of the person as a convict and his absence from the workplace will have an effect on the convicted person's economic circumstances after release.

Because a literal application of the statute's language will usually be unworkable where the convicted person is sentenced to a term of imprisonment, we are of the opinion that the result reached by the *Currie* court is justifiable, and preferable to that reached in *Nosie*. When a sentence of imprisonment is imposed and restitution is ordered, consideration of economic circumstances in setting the amount and manner of payment of restitution under the 1983 version and the manner of payment of restitution under the 1984 version of the statute is better left to the time when the payment of restitution is to begin. At the time of sentencing and imposition of restitution, the trial judge should, based upon evidence reflected in the record, determine and impose the full amount of restitution, and set a time within which that amount should be paid. In accordance with *Currie*, when the convicted person is released from incarceration, he or she may petition the court for a reconsideration of the restitution order. At that time the trial judge can realistically evaluate the economic circumstances of the convicted person in dealing with the matter of restitution. If the convicted person fails to contact the court for reconsideration of the restitution order and at the same time fails to pay the amount, the prosecutor or the court may on its own motion bring the person before the court pursuant to A.R.S. § 13–806 (as amended, Laws 1980, ch. 229, § 10).[3]

■ For the reasons discussed above we will not remand this case for modification of the restitution order. Appellant may petition the court for reconsideration of the restitution order upon release from incarceration. Pursuant to A.R.S. § 13–4037,

we do, however, strike that portion of the restitution order delegating to the Board of Pardons and Paroles the trial court's duty to set the manner of payment of restitution. *See State v. Nosie, supra.*

This court has, pursuant to A.R.S. § 13–4035, reviewed the record and has found no reversible error. Upon the filing of this decision, counsel's obligations pertaining to the representation of appellant in this appeal have come to an end. Counsel need do no more than inform appellant of the status of the appeal and appellant's future options, unless counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck,* 140 Ariz. 582, 684 P.2d 154 (1984).

The revocation of probation and sentence imposed, as modified, are affirmed.

KLEINSCHMIDT, J., concurs.

SHELLEY, Presiding Judge, dissenting:

I respectfully dissent only on that portion of the majority opinion dealing with the issue of restitution. A.R.S. § 13–603(A) states: "Every person convicted of any offense defined in this title or defined outside this title *shall be sentenced* in accordance with this chapter." (Emphasis added.)

A.R.S. § 13–603(A) and (C) requires that *at the time of sentencing,* after the full amount of economic loss to the victim is determined, the court shall order the restitution to be paid "in the manner as determined by the court after consideration of the economic circumstances of the convicted person."

The majority opinion in effect nullifies the above-quoted requirement from A.R.S. § 13–603(C) as to persons sentenced to prison. The fact that the defendant and others can come into court after the defendant is released from prison and apply for modification of the payment order does not in any

---

**3.** In 1986 the Arizona Legislature substantially amended the statutory provisions relating to the imposition and collection of restitution by victims of criminal offenses. *See* Laws 1986, ch.

248, effective August 13, 1986. Accordingly, some of the procedures set forth in this opinion and in *State v. Currie, supra,* will not be applicable to offenses occurring after August 12, 1986.

way comply with the requirements of the statute even though the court can at that time consider the economic circumstances.

The case of *City of Phoenix v. Superior Court,* 101 Ariz. 265, 419 P.2d 49 (1966), referred to by the majority opinion did not nullify a statutory provision. The court stated:

> If " * * * a literal [interpretation] of the language leads to a result which produces an absurdity, it is our duty to *construe* the act, *if possible,* so that it is a reasonable and workable law * * * " (Emphasis added)

101 Ariz. at 267, 419 P.2d at 51, (citing *Garrison v. Luke,* 52 Ariz. 50, 78 P.2d 1120 (1938)).

In the *City of Phoenix* case, the City and Maricopa County sought to nullify an order of the superior court prohibiting them from holding concurrent elections in the same polling places. The respondents asserted that the holding of concurrent elections in the same polling places violated the statutory provision requiring that no person shall be allowed to remain within the fifty-foot limit while the polls are open *except for the purpose of voting* and except for election officials and one representative of each political organization represented on the ballot.

The court held that holding concurrent elections at the same polling places was consistent with the spirit of the law as people would be there *for the purpose of voting.* The decision did not nullify the statutory requirement.

In this case, the trial court made no attempt to determine the economic circumstances of the defendant when he made the restitution order. In my opinion, the trial judge must make a good faith effort at the time of sentencing to determine to the extent possible the economic potential and circumstances of the defendant and based thereon, he must then set the manner of payment. This would not preclude the defendant and others from coming in for modification of the restitution order post-release.

In my opinion this case should be reversed solely on the issue of restitution and remanded for the trial court to make a good faith effort to set the manner of payment as required by the statute.